# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DONALD ISKEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.:  N22C-04-170 FJJ |
| v. | ) | |
| | ) | |
| RICK GALSTER III INSURANCE | ) | |
| AGENCY,  INC., | ) | |
| | ) | |
| Defendant. | ) | |

Date Submitted: October 4, 2022
Date Decided: November 3, 2022

## OPINION AND ORDER UPON CONSIDERATION OF RICK GALSTER III INSURANCE AGENCY, INC.'S MOTION TO DISMISS DENIED.

*Sean O'Kelly*, *Esquire*, O'Kelly & O'Rourke, 824 North Market Street, Suite 1001A, Wilmington, Delaware 19801

*Loren Barron, Esquire*, Margolis Edelstein, 300 Delaware Avenue, Suite 800, Wilmington, Delaware 19801

**JONES, J.**

## OPINION AND ORDER

The Plaintiff, Donald Isken ("Mr. Isken"), has filed suit against Rick Galster III Insurance Agency, Inc. ("Galster Insurance") seeking monetary damages for negligence, fraudulent inducement, and fraudulent misrepresentation. Galster Insurance has moved to dismiss the complaint because: (1) Mr. Isken did not allege Galster Insurance owed him a fiduciary duty; (2) Mr. Isken did not plead fraud with particularity; and (3) Mr. Isken relied on representations outside the four corners of the contract.

For the reasons that follow, Galster Insurance's motion to dismiss must be **DENIED**.

## FACTUAL BACKGROUND

Galster Insurance is a Virginia stock corporation that maintains a place of business in Wilmington, Delaware.[1] A third-party broker agency, Galster Insurance sells, solicits, and negotiates insurance on behalf of its clients in exchange for compensation. Mr. Isken is a Delaware resident who owns property located at 913 Stuart Road in Wilmington, Delaware (the "Insured Premises").[2]

Nationwide Insurance Company covered the Insured Premises via a homeowner insurance policy ("the Nationwide Policy") until September 2018, when Nationwide elected not to renew the policy.[3] In search of a replacement policy, Mr.

---

[1] *See* Plaintiff's Complaint at 1. The Court takes the factual record from the complaint, as is required under Superior Court Civil Rule 12(b)(6).
[2] *See id.* at 2
[3] *See id.*

Isken contacted Galster Insurance and instructed its agent broker, Rick Galster III ("Mr. Galster"), to obtain new coverage for the Insured Premises on equivalent terms as the Nationwide Policy.[4] Galster Insurance secured a replacement policy ("the Replacement Policy") through Scottsdale Insurance Company, which became effective on September 19, 2018.[5]

Nearly two years later, in August 2020, two storms hit the Insured Premises.[6] Consequently, the Insured Premises sustained loss of electricity for several days.[7] Without electricity, the Insured Premise's sump pump failed and one foot of water flooded into two fully furnished living spaces in the lower-level living area.[8] All told, the cost of restoring the damaged areas to their previous condition exceeded $100,000.[9]

When Mr. Isken informed Galster Insurance of the damage, Mr. Galster advised Mr. Isken to immediately file a claim under the Replacement Policy.[10] Mr. Isken did so.[11] However, through his conversations with the in-house claims adjuster for Scottsdale Insurance Company, Mr. Isken learned the Replacement Policy only provided $5,000 worth of coverage for water damage, instead of the $50,000 he instructed Galster Insurance to obtain.[12]

---

[4] *See id.* Through their conversations, Mr. Iskin alleges he made Mr. Galster aware of previous claims for water damage to the Insured Premises in 2015 and 2017.
[5] *See id.* at 3.
[6] *See id.*
[7] *See id.*
[8] *See id.*
[9] *See id.*
[10] *See id.*
[11] *See id.*
[12] *See id.* at 4.

Mr. Isken subsequently requested, and received for the first time, a copy of the Replacement Policy.[13] After reviewing it, Mr. Isken filed the instant suit against Galster Insurance.[14] Galster Insurance now moves to dismiss the complaint.

## STANDARD OF REVIEW

On a motion to dismiss, the Court must determine whether the "plaintiff 'may recover under any reasonably conceivable set of circumstances susceptible of proof.'"[15] If the plaintiff may recover, then the motion must be denied.[16] This Court may grant the motion if "it appears to a reasonable certainty that under no state of facts which could be proved to support the claim asserted would plaintiff be entitled to relief."[17] When applying this standard, the Court will accept as true all non-conclusory, well-pled allegations[18] and must draw all reasonable factual inferences in favor of the non-moving party.[19]

Further, to state a viable claim for fraud under Superior Court Civil Rule 9(b),[20] the plaintiff must well-plead:[21]

> (i) a false representation, usually one of fact, made by a defendant; (ii) defendant knew or believed the representation was false, or made it with reckless indifference to the truth; (iii) an intent to induce the plaintiff to act or refrain from acting; (iv) the plaintiff acted or refrained from acting in justifiable

---

[13] *See id.*
[14] *See id.*
[15] *Holmes v. D'Elia*, 2015 WL 8480150, at *2 (Del. 2015).
[16] *See Deuley v. DynCorp Int'l, Inc.*, 2010 WL 704895, at *3 (Del. Super. 2010) (internal citations omitted).
[17] *Fish Eng'g Corp. v. Hutchinson*, 162 A.2d 722, 724 (Del. 1960).
[18] *See Pfeffer v. Redstone*, 965 A.2d 676, 683 (Del. 2009).
[19] *See Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005) (internal citations omitted).
[20] Super. Ct. Civ. R. 9(b).
[21] *Trentwick American Litigation Trust v. Ernest & Young, LLC.*, 906 A.2d 168, 207 (Del. Ch. 2006), *aff'd* 931 A.2d 438 (Del. 2007).

reliance on the representation; and (v) damage resulting from such reliance.[22]

## ANALYSIS

### A. Galster Insurance's Duty to Mr. Isken

Galster Insurance first argues that Mr. Isken's professional negligence claim must fail because Mr. Isken did not plead and prove Mr. Galster owed him a fiduciary duty. To support this proposition, Galster Insurance turns to this Court's recent decision in *Fansler v. North American Title Insurance Company*.[23]

The *Fansler* Court granted dismissal in a professional negligence claim after it determined the plaintiff failed to establish a fiduciary duty existed between the parties.[24] *Fansler*, however, does not require insured plaintiffs to well-plead the existence of a fiduciary duty in *every* negligence claim brought against insurance agents.[25]

This Court first explored the relationship between insured and agent in *Sinex v. Wallis*.[26] The *Sinex* plaintiff brought suit against a defendant and the defendant's employer. In response, the defendant filed third-party complaints against its insurance agent and agency, claiming both negligently failed to obtain more than the minimum no-fault insurance coverage. Granting summary judgment for the defendant, *Sinex* outlined the duties between the two parties:

---

[22] *See Infomedia Cp., Inc. v. Orange Health Sols., Inc.*, 2020 WL 4384087, at *3 (Del. Super. 2020) (citing *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)).
[23] 2019 WL 1281432 (Del. Super. 2019).
[24] *See id.* at *5.
[25] *See generally id.*
[26] 611 A.2d 31 (Del. Super. Ct. 1991).

> Ordinarily, an insurance agent assumes only those duties normally found in an agency relationship. This includes the obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by the insured. The agent assumed no duty to advise the insured on the specific insurance matters merely because of the agency relationship. On the other hand, an expanded agency or relationship creating a greater duty of the agent to the insured may arise when an agent holds himself or herself out as an insurance counselor or specialist and is receiving compensation apart from the premium(s) paid.[27]

The *Sinex* Court next addressed plaintiff's argument that the defendant agent violated the ordinary duty of reasonable care, diligence, and judgment. In support of its position, the *Sinex* plaintiff directed the Court's attention to a line of cases from other jurisdictions. Those cases held an insurance agent breached his duty to the insured when the agent failed to follow explicit instructions regarding the type (or amount) of coverage required. The Court, however, declined to address whether Delaware recognizes such a cause of action. Instead, *Sinex* rejected the plaintiff's argument as a matter of fact, finding the plaintiff never provided the defendant agent with specific instructions in the first place.

Fourteen years after *Sinex*, this Court again confronted the issue of insurance agent liability in *Montgomery v. William Moore Agency*.[28] Denying summary judgment, the *Montgomery* Court set out its view of the law:

> The court holds that an insurance agent must offer coverage in the way that a reasonably competent agent would under the circumstances. And, generally, an insurance agent has no duty to advise a client. This general

---

[27] *See id.* at 33 (internal citations omitted).
[28] 2015 WL 1056326 (Del. Super. 2015).

> rule, however, turns largely on the relationship between the agent and the client and will not apply if: 1) the agent voluntarily assumes the responsibility for selecting the appropriate policy for the insured or 2) the insured makes an ambiguous request for coverage that requires clarification.[29]

*Montgomery*, in short, recognized a fiduciary relationship is not a required element in every negligence case between an insured and an agent.

Finally, this Court most recently addressed the duties between insured and agent in *Slaubaugh Farm, Inc. v. Farm Family Ins. Co*.[30] In *Slaubaugh*, two plaintiff farmers instructed their long-time insurance agent to obtain new homeowner's insurance with coverage for snow and ice. When the policy was issued, however, the issuing insurance company failed to include the snow and ice coverage. The plaintiffs brought this deficiency to the attention of the agent.

The agent, in turn, requested the insurance company to issue a revised policy with all demanded coverage. In response, the insurance company acknowledged the request but failed to take further action. The plaintiffs subsequently filed suit against insurance company and agent after a blizzard caused extensive damage to a chicken house on the property. Concluding a genuine issue of fact existed as to whether the agent breached his duty, the *Slaubaugh* Court held:

> An insurance agent assumes only those duties normally found in an agency relationship. This duty includes the obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by the insured. An insurance agent most offer coverage in the way that a

---

[29] *See id.* at *2.
[30] 2018 WL 5473033 (Del. Super. 2018).

7

reasonably competent agent would under the circumstances. Generally, an insurance agent does not have a duty to advise a client with respect to appropriate insurance coverage. This general rule, however, does not apply if the agent voluntarily assumes the responsibility for selecting the appropriate coverage or if the insured makes an ambiguous request for coverage that requires clarification.[31]

*Slaubaugh* then turned to the alleged failure of the agent to follow up with the request for revised coverage. To that point, the Court found "[i]t is … well-settled law that an agent has the obligation to use reasonable care, diligence, and judgment in processing the insurance requested by the insured."[32]

*Slaubaugh* makes clear that an agent carries the affirmative duty to seek clarification when a request for insurance coverage is ambiguous. If a duty is charged in this context, then surely it must be imposed when an agent fails to follow the explicit instructions of the insured.[33] Thus, to the extent there is any doubt in Delaware jurisprudence, this Court will not require a plaintiff to plead the existence of a fiduciary relationship if an agent allegedly fails to follow the specific instructions of the insured.

---

[31] *See id.* at *3 (internal citations omitted).

[32] *See id.* at *4.

[33] As noted in *Sinex*, a line of cases from other jurisdictions impose liability on the agent when the agent fails to follow the explicit instructions of the insured. *See, e.g. Consolidated Sun Ray, Inc. v. Lea*, 401 F.2d (3d Cir. 1968), *cert. denied* 393 U.S. 1050, 89 S. Ct. 688, 21 L.Ed.2d 692 (1969) (duty to exercise care owed by reasonable and prudent broker breached when agent failed to follow *explicit* instructions of insured); *Port Clyde Foods, Inc. v. Holiday Syrups, Inc.*, S.D.N.Y., 563 F.Supp. 893 (1982) (broker breached duty to provide skill, care, and diligence when insurance agent failed to discover that specifically requested coverage had not been provided by insurer); *Roberson v. Knapp Ins. Agency*, 125 Ill.App.2d 373, 260 N.E.2d 849 (1970) (agent found in breach when policy did not provide coverage specifically requested); *Karam v. St. Paul Fire and Marine Ins. Co.*, La.Supr., 281 So.2d 728 (1973) (breach found when insured requested $100,000 in coverage but agent erroneously obtained $10,000).

Mr. Iskin has well-pled that he explicitly instructed Mr. Galster to replace the Nationwide Policy with equivalent coverage. Because Mr. Galster owed Mr. Iskin a duty to follow these instructions (even absent a fiduciary relationship between the two), the Court will not dismiss this count of the complaint.

## B. The Negligent Misrepresentation Pleading Requirements

Galster Insurance also argues Mr. Isken has not adequately pled the *prima facie* elements of fraud under Delaware law. The Court disagrees.

In *TEK Stainless Piping Products, Inc. v. Smith*,[34] this Court outlined the three minimum pleading requirements a fraud claim must meet under Superior Court Civil Rule 9(b) to survive dismissal. Specifically, the *TEK* Court found the alleged misrepresentations must: (1) be enumerated; (2) identify the parties to the conversation; and (3) set out the content of the discussions with sufficient particularity to place the party on notice of the precise misconduct with which it is charged.[35]

The Court is satisfied Mr. Isken's complaint meets these requirements. Mr. Isken alleges he specifically instructed Mr. Galster to acquire a policy identical to the Nationwide Policy. According to Mr. Isken, this conversation took place after Nationwide noticed the parties it was declining to renew the Nationwide Policy and before Mr. Galster obtained the Replacement Policy.[36] Although Mr. Isken does not

---

[34] 2013 WL 7577468 (Del. Super. 2013).
[35] *See id.* at *3.
[36] According to Mr. Isken, Nationwide notified him of the refusal to renew the policy on September 18, 2018, and Mr. Isken relayed this information to Mr. Galster shortly thereafter.

specify the time and place of the dialogue, the Court finds the substance of the discussion lays out the elements of fraud with sufficient particularity. Therefore, the Court cannot dismiss Mr. Isken's negligent misrepresentation and fraudulent inducement claims.

### C. *Flowshare* and the Four Corners of the Contract

Finally, Galster Insurance contends Mr. Isken's fraudulent inducement claim must fail because the claim relies on representations made by Mr. Galster outside the four corners of their contract. Mr. Isken's reliance on extra-contractual representations, so claims Galster Insurance, runs afoul of this Court's "bootstrap doctrine" as articulated in *Flowshare, LLC v. GeoResults, Inc.*[37] The Court finds the bootstrap doctrine has no applicability to this case.

*Flowshare* was a breach of contract action concerning an integration clause. As the *Flowshare* Court instructed:

> A fraud claim can be based on representations found in a contract, however, "where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." A plaintiff "cannot bootstrap" a claim for a breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations or "simply by adding the term fraudulently induced to a complaint." Essentially, a fraud claim alleged contemporaneously with a breach of contract claim may survive, so long as the claim is based on conduct that is separate and distinct from the conduct constituting

---

[37] 2018 WL 3599810 (Del. Super. 2018).

breach. Allegations that are focused on inducement to contract are "separate and distinct" conduct."[38]

In other words, *Flowshare* assumes a breach of contract action with a corresponding fraud claim. Mr. Isken has not alleged Galster Insurance breached their contract; rather, as noted above, his claim is rooted in Mr. Galster's breach of duty owed to him *in tort* alone and independent of their contract. Therefore, a *Flowshare* analysis is inappropriate and the Court will not dismiss the fraudulent inducement claim under this theory.

## CONCLUSION

Based on the foregoing, Galster Insurance's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

*/s/ Francis J. Jones, Jr.*

Francis J. Jones, Jr., Judge

cc:    File&ServeXpress

---

[38] *See id.* at *5 (internal citations omitted).

11